T.C. Summary Opinion 2008-12

UNITED STATES TAX COURT

ROBERT A. EDER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24370-05S.                Filed February 6, 2008.

Robert A. Eder, pro se.

Angela J. Kennedy, for respondent.

THORNTON, Judge:   This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

_____

   [1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $3,172 deficiency in petitioner's 2002 Federal income tax. The issue for decision is whether during 2002 petitioner engaged in his Reliv International marketing activity for profit within the meaning of section 183.

## Background

The parties have stipulated many facts, which are so found. When he petitioned the Court, petitioner resided in Indiana.

Petitioner is single, having divorced in 1994. He holds a master's degree in civil engineering. In 1991, he began working as an engineer at Abbott Laboratories (Abbott). During 2002, he worked for Abbott 9 hours a day, 5 days a week, receiving wages of $85,064.84.

In 1997, while employed at Abbott, petitioner met a couple at his gymnasium. They convinced him to become an independent distributor for Reliv International (Reliv), a network marketing company that sells health care products. Petitioner had no previous experience in network marketing or retail sales.

According to petitioner, he can make a profit on sales of Reliv products, which he orders directly from Reliv. He regards any profits from direct sales, however, as incidental to the supposedly more lucrative goal of "sponsoring" other people in

the Reliv marketing program, which he says would enable him to earn commissions on their Reliv sales.

As it happens, since he became involved in Reliv marketing in 1997, petitioner's only customers have been family members. Likewise, the only two people he has sponsored as Reliv distributors have been family members--his son and his brother, both of whom became distributors to take advantage of the distributor's discounts on Reliv products. The son did not last long in the business; he quit in 1999, the same year he started.

During 1998, petitioner advertised Reliv in a weekly paper called Pennysaver. He discontinued this advertising in 1999. Since then, he has not advertised in any newspaper. Similarly, during 1998 petitioner posted bulletin board flyers in laundromats and grocery stores but likewise discontinued this practice in 1999. Although Reliv sponsors Web sites for its distributors, petitioner has never had a Web site for his Reliv activity.

Petitioner commuted 80 miles, one-way, to his job at Abbott. On certain days, he would stop at commuter train stations or shopping malls along his commuting route and place "drop cards" on car windshields. These cards proclaimed "The Opportunity of a Lifetime" and gave his phone number but generally did not mention the Reliv name. Petitioner has never received any response to any of these drop cards.

In 2000, petitioner began sending out direct mail information, promoting Reliv products and the opportunity to become "healthy & rich". Some of these direct mail materials indicated that petitioner had been using Reliv products for many months and that they had reduced his symptoms of various chronic illnesses and contributed to his "overall feeling of good health."

Using an Internet database at his local public library, petitioner secured names and addresses of women in the northwest Indiana area to whom he would send the direct mail information. Each week, petitioner selected names and addresses of about 48 women to whom he would mail postcards. Petitioner would follow up the first postcard with a second and a third and then attempt to telephone some of these women. Each month, he would talk to several of them on the telephone for 15 or 20 minutes, making his Reliv pitch. On rare occasions, petitioner would meet with one of these women at the local library to give them Reliv materials. As far as the record reveals, none of these contacts ever resulted in petitioner's making any Reliv sales or sponsoring any Reliv distributors.

On Tuesday evenings and Saturday mornings, petitioner attended Reliv meetings approximately 10 miles from his home. During 2002, petitioner attended national Reliv conferences in Reno, Nevada, and St. Louis, Missouri.

In 1998, petitioner prepared a "Reliv Cold Marketing Budget", listing anticipated expenditures but showing no projected receipts or profits.  He reused this "budget" for each succeeding year.  For 2002, this "budget" showed total expenses of $11,145 but no receipts or profits.  Until preparing for this trial, petitioner had never prepared a business plan for his Reliv activity, nor had he calculated a break-even point showing how much future profit he would need to recoup his past losses. Petitioner maintained no organized record-keeping system.

On Schedules C, Profit or Loss From Business, of Forms 1040, U.S. Individual Income Tax Return, for taxable years 1997 through 2005, petitioner reported net losses from his Reliv marketing activity as follows:

| Tax Year | Gross Income | Operating Expenses | Net Losses |
|---|---|---|---|
| 1997 | $233.00 | ($2,925.00) | ($2,692.00) |
| 1998 | 688.00 | (9,431.00) | (8,743.00) |
| 1999 | 376.08 | (9,350.11) | (8,974.03) |
| 2000 | 732.02 | (8,833.54) | (8,101.52) |
| 2001 | 1,003.13 | (9,967.82) | (8,964.69) |
| 2002 | 1,123.68 | (12,894.71) | (11,771.03) |
| 2003 | 1,221.16 | (11,629.79) | (10,408.63) |
| 2004 | 1,633.18 | (11,834.31) | (10,201.13) |
| 2005 | 1,616.02 | (1,616.02) | -- |

In the notice of deficiency, with respect to petitioner's 2002 taxable year, respondent determined that petitioner was not engaged in the Reliv activity for profit and that consequently he

was entitled to claim itemized deductions for operating expenses only to the extent of the $1,124 of reported gross income.[2]

## Discussion

Under section 183(b)(2), if an individual engages in an activity not for profit, deductions relating thereto are allowable only to the extent gross income derived from the activity exceeds deductions that would be allowable under section 183(b)(1) without regard to whether the activity constitutes a for-profit activity. See Allen v. Commissioner, 72 T.C. 28, 32-33 (1979).

The taxpayer generally bears the burden of establishing that his or her activities were engaged in for profit. Rule 142(a).[3] The relevant question is whether the taxpayer had a "good faith expectation of profit". Burger v. Commissioner, 809 F.2d 355,

---

[2] The $12,894.71 of expenses claimed on petitioner's 2002 Schedule C bears little similarity to the expenses listed on his 2002 "budget". For instance, the largest claimed expense on his 2002 Schedule C was $6,144.41 for car and truck expenses; by contrast, his 2002 "budget" lists $2,300 for "transportation" and "travel" expenses including tolls, parking, and meals. The largest single item on his 2002 "budget" was for $3,000 to "Purchase product". By contrast, on his Schedule C, petitioner reported no purchases or inventory.

[3] In certain cases, the burden of proof shall be on the Commissioner if, in any court proceeding, the taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtit. A or B of the Code. Sec. 7491(a)(1). Because we decide this case on the preponderance of the evidence, rather than by reference to the placement of the burden of proof, we do not decide whether petitioner has met the requirements under sec. 7491 to shift the burden of proof to respondent.

358 (7th Cir. 1987), affg. T.C. Memo. 1985-523; see Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).  The taxpayer's expectation, however, need not be reasonable.  Burger v. Commissioner, supra at 358; Golanty v. Commissioner, 72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(a), Income Tax Regs.  Whether the taxpayer has the requisite profit objective is a question of fact, to be resolved on the basis of all relevant circumstances, with greater weight being given to objective factors than to mere statements of intent.  Dreicer v. Commissioner, supra; Golanty v. Commissioner, supra at 426.

The regulations under section 183 provide a nonexclusive list of factors to be considered in determining whether an activity is engaged in for profit.  The factors include:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his or her advisers; (3) the time and effort the taxpayer expended in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the taxpayer's success in carrying on other activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the taxpayer's financial status; and (9) whether elements of personal pleasure or recreation are involved.  Sec. 1.183-2(b), Income Tax Regs.; see

Golanty v. Commissioner, supra at 426.  No single factor, nor the existence of even a majority of the factors, is controlling, but rather an evaluation of all the facts and circumstances is necessary.  Golanty v. Commissioner, supra at 426-427.

1.  Manner in Which Petitioner Carried On His Reliv Activity

Petitioner has stipulated that he had not prepared a business plan for his Reliv activity before preparing for this trial.  He prepared no formal budget, contemporaneous profit projections, or break-even analyses.[4]  He maintained no organized record-keeping system that might have enabled him periodically to evaluate his profitability (or more accurately, the extent of his nonprofitability).  To the contrary, the manner in which petitioner carried on his Reliv activity strongly suggests that he was not primarily concerned about realizing a profit.  This conclusion is buttressed by petitioner's stipulation that he "will not stop his Reliv activities until he runs out of money to finance the activity."

---

[4] At trial, petitioner presented a purported plan for recouping his past losses.  That plan appears premised in part on an assumption that at some indefinite point petitioner will be earning commissions on sales by at least 120 Reliv distributors that he will have sponsored.  At trial, petitioner conceded that this projection lacked any "concrete justification".  When we consider that over his nearly 10-year involvement with the Reliv activity, petitioner's only sponsorees have been his brother and his son (who quickly quit the activity), a financial plan predicated on a projection of 120 sponsorships appears wildly optimistic.

We conclude that petitioner did not operate his Reliv activity in a businesslike manner. This factor weighs heavily in respondent's favor.

2.  Expertise of Petitioner

Before becoming involved with Reliv, petitioner had no sales or network marketing experience. He read some books and consulted with other persons involved with Reliv, whom he concedes were not experts, but there is no evidence that he sought the expertise of qualified, disinterested third parties. This factor favors respondent.

3.  Time and Effort Expended in Carrying On the Activity

Time and effort expended in carrying on an activity may be indicative of a profit objective, particularly in the absence of substantial personal or recreational elements associated with the activity. Sec. 1.183-2(b)(3), Income Tax Regs. A taxpayer's withdrawal from another occupation to devote most of his energies to the activity may evidence a profit objective. Id. Petitioner spends several hours each week on his Reliv activity. As discussed elsewhere in this opinion, we are not convinced that there are no personal elements in this activity, especially considering that all of his customers have been family members. Moreover, petitioner pursued his Reliv activity while continuing to work full time at Abbott, 5 days a week. This factor favors respondent.

4.   Expectation That Assets May Appreciate in Value

Petitioner does not contend and the record does not suggest that there are any assets involved with petitioner's Reliv activity that may appreciate in value.  We view this factor as neutral.

5.   Success in Carrying On Similar Activities

Insofar as the record reveals, petitioner has engaged in no other activities similar to his Reliv activity, by which we might evaluate his success in those other activities.  We view this factor as neutral.

6.   History of Income or Losses

Petitioner has never realized a profit from his years of Reliv activity.  Rather, for the year at issue and the preceding 5 years, petitioner's claimed operating expenses for his Reliv activity exceeded his revenues therefrom by factors ranging from about 10 to 24.  Petitioner suggests that these losses are due to his Reliv activity's being in a startup phase; he suggests that it is in the nature of the Reliv business to experience a dramatic profit spike at some point.  Petitioner offered no concrete information, however, to convince us that his expectation of a future revenue spike is more than wishful thinking.  This factor favors respondent.

7.   Amount of Occasional Profits, If Any

Petitioner has never generated any profit from his Reliv activity.  Petitioner contends that he will begin to realize substantial profits only upon sponsoring other Reliv distributors.  Over some 10 years, however, he has sponsored only his brother and (fleetingly) his son, with minimal effect on profitability.  This factor favors respondent.

8.   Taxpayer's Financial Status

Substantial income from sources other than the activity may indicate lack of a profit objective, particularly if:  (1) Losses from the activity generate substantial tax benefits, and (2) personal or recreational elements are involved.  Sec. 1.183-2(b)(8), Income Tax Regs.

For the year at issue and all prior years, petitioner earned substantial income from his full-time employment as an engineer at Abbott.  For 2002, petitioner sought to offset a portion of this wage income with a claimed net loss from his Reliv activity.  The claimed net loss is attributable in significant part to claimed travel expenses which, if allowed, would effectively permit petitioner to deduct a portion of his otherwise nondeductible commuting expenses by the expedient of placing drop cards along his commuting route.  His persistence in placing these drop cards without ever receiving a single response to them

is indicative of a lack of profit objective.  This factor favors respondent.

9.    Elements of Personal Pleasure or Recreation

Personal or recreational aspects of an activity may indicate that the activity was not conducted with a profit objective. McKeever v. Commissioner, T.C. Memo. 2000-288; sec. 1.183-2(b)(9), Income Tax Regs.  The mere fact that a taxpayer derives pleasure from an activity, however, does not show a lack of a profit objective if the activity is, in fact, conducted for profit as evidenced by other factors.  Sec. 1.183-2(b)(9), Income Tax Regs.; see also Jackson v. Commissioner, 59 T.C. 312, 317 (1972).

As previously discussed, we believe there were some personal or recreational aspects to petitioner's Reliv activity, such as attending weekly meetings and contacting family members.  In addition, as a Reliv distributor, petitioner presumably would enjoy a discount for Reliv products, similar to the discount that motivated his brother and his son to become involved as Reliv distributors.  The record indicates that petitioner was a long-time user of Reliv products.  It would appear that the ability to purchase Reliv products at a discount was a significant personal benefit to petitioner.  This factor favors respondent.

Conclusion

     On the basis of all the evidence, we conclude that during 2002 petitioner did not engage in the Reliv activity with a good faith expectation of profit.  Accordingly,

<u>Decision will be entered for respondent</u>.